TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

---

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 91-720 |
| of | : | |
| | : | FEBRUARY 24, 1992 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| RONALD M. WEISKOPF | : | |
| Deputy Attorney General | : | |
| | : | |
| | : | |

---

THE HONORABLE NEWTON R. RUSSELL, MEMBER OF THE STATE SENATE, has requested an opinion on the following question:

May a hospital district pay the traveling and incidental expenses incurred by the spouse of a district director who is attending a conference on official business of the district?

CONCLUSION

A hospital district may not pay the traveling and incidental expenses incurred by the spouse of a district director who is attending a conference on official business of the district.

ANALYSIS

We are advised that the board of directors of a local hospital district has voted to permit members of the public to attend conferences along with board members at district expense to assist the directors with their official responsibilities. But we are also told that the true purpose for the action is to allow spouses of the directors to attend the conferences with all expenses related thereto paid by the district. We are asked whether payment of the spouses' expenses would be lawful. Under the circumstances presented, we conclude that it would not be lawful.

1. The Local Hospital District Law

Local hospital districts are formed and derive their powers under the Local Hospital District Law (Health & Saf. Code, § 32000 et seq.; hereafter "District Law"). (See 67 Ops.Cal.Atty.Gen. 492 (1984); 66 Ops.Cal.Atty.Gen. 13 (1983).)[1] The powers granted to them under the District Law are seemingly broad; a hospital district is permitted to exercise those powers

---

[1]Unidentified statutory references prior to footnote 4 are to the Health and Safety Code.

and to do those things that are expressly mentioned in the District Law or which are necessarily implied (§ 32001), and do "any and all other acts and things necessary to carry out [the District Law]" (§ 32121, subd. (k)). (Cf. 67 Ops.Cal.Atty.Gen. at 493; 30 Ops.Cal.Atty.Gen. 351, 353 (1957).) Needless to say, this statutory grant of authority includes a "`broad authority to contract.' (24 Ops.Cal.Atty.Gen. 53 (1954)." (67 Ops.Cal.Atty.Gen. at 492.)

We presume that the payment of traveling expenses of a spouse who accompanies a director to a convention ostensibly to assist the director in the performance of public duties would follow upon a contract providing for the same. However, as we have pointed out before, any particular contract that a hospital district executes must be within the authority of a hospital district to make. (67 Ops.Cal.Atty.Gen. at 493.)

A hospital district is authorized to maintain membership in any local, state, or national group or association organized and operated for the promotion of public health and welfare or the advancement of the efficiency of hospital administration, and to pay dues and fees thereto. (§ 32131.) It would clearly be within the authority of a district to have its directors attend meetings of such organizations, and under section 32103 they would be allowed "actual necessary traveling and incidental expenses incurred [in connection therewith] . . . ."[2]

The District Law also gives a district the power to "*employ any* officers and employees, including architects and *consultants*, the board of directors deems necessary to carry on properly the business of the district." (§ 32121, subd. (g); emphasis added.) Arguably, this would provide authority to hire a consultant to accompany and assist a director at particular meetings and to pay the consultant's necessary traveling and incidental expenses. But nothing is said in the District Law about paying the expenses of a spouse who attends such meetings with a director, and we conclude that such payment may not be sanctioned from a district's implied power to carry out the District Law's purposes.[3] In fact, as we shall next see, there are particular problems involving a contract calling for payment of the spouse's expenses.

---

[2]Section 32103 provides: "The board of directors shall serve without compensation except that the board of directors, by a resolution adopted by a majority vote of the members of the board, may authorize the payment of not to exceed one hundred dollars ($100) per meeting not to exceed five meetings a month as compensation to each member of the board of directors. [¶] *Each member of the board of directors shall be allowed his or her actual necessary traveling and incidental expenses incurred in the performance of official business of the district as approved by the board."* (Emphasis added.)

[3]Section 32121, subdivision (h) does give a district the power to "establish offices as may be appropriate and to appoint . . . employees to those offices, and to determine the number of, and appoint, all officers and employees and to fix their compensation." However, as it has been presented in the situation here, the "assistant" accompanying the director to a meeting would not do so as an "employee" of the district.

It should also be noted that the Legislature has prescribed the means for hospital districts to employ assistants --i.e., by hiring consultants. (§ 32121, subd. (g).) It has long been established that where a statute prescribes the mode by which a power may be exercised, that mode is the measure of the power. (Cf. *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 196; *Uhl* v. *Baderacco* (1926) 199 Cal. 270, 283; *Cowell* v. *Martin* (1872) 42 Cal. 605, 613; *Garson* v. *Juarique* (1979) 99 Cal.App.3d 769, 774; 66 Ops.Cal.Atty.Gen. 17, 24 (1983); 64 Ops.Cal.Atty.Gen. 804, 808 (1981).) But the spouse here would not be accompanying the director as a consultant contemplated by the statute.

2. Government Code Section 1090

"Section 1090 of the Government Code codifies the common law prohibition and the general policy of this state against public officials having a personal interest in contracts they make in their official capacities. [Citations]." (66 Ops.Cal.Atty.Gen. 156, 157 (1983.) In relevant part Government Code section 1090[4] provides as follows:

"Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members."

A director of a hospital district is covered by the section's prohibition. (*Eldridge* v. *Sierra View Local Hospital Dist.* (1990) 224 Cal.App.3d 311, 320; cf. 66 Ops.Cal.Atty.Gen. at 14; 58 Ops.Cal.Atty.Gen. 323, 324 (1975).)

The test for determining whether section 1090 has been violated is whether an officer or employee has participated in the making of a contract in his or her official capacity. (See *Millbrae Assn. for Residential Survival* v. *City of Millbrae* (1968) 262 Cal.App.2d 222, 237; 66 Ops.Cal.Atty.Gen. at 160-161.) If an official is a member of a board that actually executes the contract, he or she is conclusively presumed to have been involved in its making. (*Thompson* v. *Call* (1985) 38 Cal.3d 633, 649.) Furthermore, "the statute not only strikes at situations that *do* involve actual fraud and dishonesty but also at those in which such is absent but in which the *possibility* exists nonetheless for *personal* influence of an interested [officer] to be brought to bear, either directly or indirectly, on an official decision. [Citations.]" (66 Ops.Cal.Atty.Gen. at 160, fn. 3.)

In this case, the district board's voting to permit a director's spouse to accompany him or her on a business trip at district expense would involve the board and the director in the making of a proscribed "contract." (See 69 Ops.Cal.Atty. 255, 258, fn. 5 (1986).) Even if the contract is not formally executed by the board, its vote would sufficiently connect the director, as a member of the board, with the prohibited conduct. That being the case, and since there would be no question that the director would have a financial interest in the payment of the expenses called for under it (see, e.g., *Nielsen* v. *Richards* (1925) 75 Cal.App. 680; 69 Ops.Cal.Atty.Gen. at 255, 259-260; 69 Ops.Cal.Atty.Gen. 102, 107 (1986)), section 1090 would be violated.[5]

Where the section 1090 prohibition is applicable, as we find it here, it acts as an absolute bar to a board entering into the contract (see 69 Ops.Cal.Atty.Gen. at 256; 69 Ops.Cal.Atty.Gen. at 104), and any contract authorized by the board's action would be void. (Cf. *Thomson* v. *Call, supra*, 38 Cal.3d at 646; *People* v. *Deysher* (1934) 2 Cal.2d 141, 146; *Millbrae Assn for Residential Survival* v. *City of Millbrae, supra*, 262 Cal.App.2d at 236; *Terry* v. *Bender* (1956) 143 Cal.App.2d 198, 206; *Schaefer* v. *Berinstein* (1956) 140 Cal.App.2d 278, 290.) The district may not pay the traveling and incidental expenses of the director's spouse under the circumstances presented.

---

[4]Unidentified statutory references hereafter are in the Government Code.

[5]Section 1090 would not be violated where the "contract" was for reimbursement of the director's own actual and necessary expenses. An exception to the section 1090 prohibition exists for "an officer in being reimbursed for his or her actual and necessary expenses incurred in the performance of official duty." (§ 1091.5, subd. (a)(2); see *Citizen Advocates, Inc.* v. *Board of Supervisors* (1983) 146 Cal.App.3d 171, 176-178.)

3.  The California Constitution

Article XVI, section 6 of the California Constitution prohibits the making of "gifts" of public funds.  The section provides in pertinent part as follows:

"The Legislature shall have no . . . power to make any gift, or authorize the making of any gift, of any public money or thing of value to any individual . . . whatever . . . ."

Under this constitutional prohibition, the Legislature may not authorize the making of any gift of public money to any individual.  The statutory grant of authority to local hospital districts contained in the District Law must be read against this constitutional prohibition.

Payment of a spouse's traveling and incidental expenses out of district funds would constitute a direct payment of public money to an individual.  However, "[i]t is well settled . . . that expenditures of public funds or property which involve a benefit to private persons are not gifts within the meaning of [section 6 of article XVI] . . . if those funds are expended for a public purpose . . . ."  (*California Emp. etc. Com* v. *Payne* (1947) 31Cal.2d 210, 216; see also *County of Alameda* v. *Janssen* (1940) 16 Cal.2d 276, 281; *Johnston* v. *Rapp* (1951) 103 Cal.App.2d 202, 207.)  In other words,

"It has been held that public credit may be extended and public funds disbursed if a direct and substantial public purpose is served and nonstate entities are benefitted only as an incident to the public purpose.  (California Housing Finance Agency v. Elliott (1976) 17 Cal.3d 575, 583; Winkelman v. City of Tiburon (1973) 32 Cal.App.3d 834, 845.)  The benefit to the state from an expenditure for a public purpose is in the nature of consideration and the funds expended are therefore not a gift even though private persons are benefitted therefrom.  (County of Alameda v. Carleson (1971) 5 Cal.3d 730, 745-746; 47 Ops.Cal.Atty.Gen. 171, 181 (1966).)"  (67 Ops.Cal.Atty.Gen. 32, 34 (1984).)

The question thus becomes whether "the consideration [i.e., the benefit to the public] is *plainly substantial* and whether the private [individual] is benefitted *only as an incident* to the promotion of such purposes."  (*Id.* at p. 35.)

Whether a particular program serves a public purpose is primarily a legislative determination that will not be disturbed by the courts so long as it has a reasonable basis.  (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 583.)  For example, in 66 Ops.Cal.Atty.Gen. 13, we said that no "gift of public funds" would occur with respect to a hospital district providing family health insurance for the members of its board of directors "since the providing of [the] insurance serves a public purpose in compensating the directors for their services performed. [Citations.]"  (*Id.* at p. 15, fn. 4.)  In other opinions we have found the provision of employee health benefit coverage as serving a direct and substantial public purpose.  (See, e.g., 74 Ops.Cal.Atty.Gen. 159, 162 (1991); 73 Ops.Cal.Atty.Gen. 296, 304 (1990).)  But while we have said that providing incentives for the retention of employees and increasing their efficiency would serve a public purpose (73 Ops.Cal.Atty.Gen. at 304; 39 Ops.Cal.Atty.Gen. 200, 201 (1962)), that justification is not without bounds under the Constitution.  (Cf. 73 Ops.Cal.Atty.Gen. at 304).

Surely the public benefit here, if it exists at all, is more attenuated and not as plainly substantial as in the situations which we and the courts have considered before, and surely the benefit to the private individual is more than merely incidental to any public benefit.  First of all, it is one thing to provide health and other benefits to a wide class of public employees from which a

substantial public benefit might be perceived; it is quite another to provide additional compensation to a particular individual, i.e., a district director.[6] But also, the nature of the benefit here is different. Health insurance coverage for a group of public employees has been authorized by the Legislature in a number of cases in order to address a major societal concern. But the need to take one's spouse on a business trip does not rise to that level of concern, and the Legislature has not provided any express statutory basis to expend public funds for that purpose.

We find no direct and substantial public purpose to be served in paying the traveling and incidental expenses of a director's spouse so as to justify an expenditure of public funds under Article XVI, section 6 of the Constitution. The payment would be unconstitutional.

Accordingly, we conclude that under the circumstances presented, a hospital district may not pay the traveling and incidental expenses of a spouse of a district director who is attending a conference on official business.

*****

---

[6]We note that even there, it is not the director who would directly receive the benefit; it would be his or her spouse, who is not a public employee.